IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WARD MANAGEMENT COMPANY,

                                                    OPINION and ORDER

          Plaintiff,

                                                    08-cv-206-bbc

    v.

WESTPORT INSURANCE CORPORATION,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       In this civil lawsuit, which was removed from the Circuit Court for St. Croix County, plaintiff Ward Management Company alleges that defendant Westport Insurance Corporation breached its insurance contract with plaintiff and engaged in bad faith when it refused to pay for losses plaintiff suffered as a result of employee theft at its Pizza Hut restaurant. Defendant has moved for summary judgment as to both claims, contending that the statute of limitations bars plaintiff's suit.

       Defendant's motion for summary judgment will be granted. The employee dishonesty coverage in defendant's policy comes within the category of "fire insurance" under Wis. Stat. § 631.83(1)(a). Under § 631.83(1)(a), an action on a fire insurance policy must be brought within one year of the loss. Defendant allowed its insureds two years in which to bring an

1

action. Despite the additional time, plaintiff did not file this action until four years after the date of the last employee theft. As a consequence, its action for breach of the insurance contract is time-barred. Its bad faith claim is barred as well. Although plaintiff contends that defendant's bad faith continued to a time within the applicable two-year limitations period, the claim itself accrued more than two years before plaintiff filed its complaint.

As an initial matter, I note that defendant has submitted evidence establishing the amount in controversy and diversity of citizenship. Jurisdiction is present under 28 U.S.C. § 1332.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. Parties

Plaintiff Ward Management Company is a "C" corporation organized and existing under the laws of Wisconsin, with its principal place of business in Altoona, Wisconsin. Charles Ward is the president and owner of plaintiff.

Defendant Westport Insurance Company is a Missouri corporation with its principal place of business in Overland Park, Kansas.

B. <u>The Thefts</u>

In January 2001, Charles Ward began to suspect several employees of stealing from plaintiff's Hudson, Wisconsin Pizza Hut Restaurant. Plaintiff conducted monthly employee meetings during 2001, one purpose of which was to discuss and attempt to uncover suspected employee thefts. In August 2001, plaintiff fired two employees for suspected theft. Although the plaintiff contacted police, those employees were never arrested.

Throughout 2002 and 2003, plaintiff continued to experience cash shortages that Ward believed were the result of theft. In October 2003, Ward hired a private investigator who discovered that eight employees were stealing from the restaurant. Plaintiff terminated these eight employees in November 2003 and contacted police on November 22, 2003. Eventually, seven of the eight employees were convicted of theft.

C. <u>The Insurance Policies</u>

From July 1, 2002 to July 1, 2004, defendant insured plaintiff under two consecutive insurance policies. These similar policies are multi-part policies that include both Commercial Property coverage and Commercial General Liability coverage. The Commercial Property portion of the policies contained a limitation provision providing that "[n]o one may bring a legal action against us under this Coverage Part unless the action is brought within 2 years after the date on which the direct physical loss or damage occurred."

3

Under the Commercial Property portion of the policies, "[d]ishonest or criminal acts" by employees are generally excluded from coverage, except under the subpart for Building and Personal Property coverage, which provides that "[w]e will pay for direct loss or damage to Business Personal Property and 'money' and 'securities' resulting from dishonest acts committed by any of your employees . . . The most we will pay for loss or damage in any one occurrence is $250,000, unless a different limit is shown in the Schedule."

### D. The Insurance Claim

In December of 2003, plaintiff's insurance broker, Insurance Management Agency (IMA), gave defendant notice that plaintiff was seeking coverage under the Commercial Property and General Liability policy for the alleged theft losses plaintiff incurred between January 2001 and November 21, 2003, while placing plaintiff's previous insurer, Legion Insurance Company, on notice for theft losses between June 2000 and May 2002.

After receiving plaintiff's claim in 2003, defendant's independent adjuster, Larry Staub, conducted a recorded interview with Charles Ward and told Ward to submit a proof of loss to document the theft claim. On May 21, 2004, when Ward had still not submitted documentation in support of the claim, Staub wrote to Ward to advise him that because he had not submitted documentation, defendant would close its file. On August 19, 2004, defendant closed the investigation file, citing "non-pursuit" by the plaintiff.

4

On June 29, 2005, Ward submitted a copy of a signed proof of loss that he had previously submitted to Legion Insurance Company, claiming $1,045,742.14 for losses incurred between January 2001 and November 21, 2003.  On September 29, 2005, Ward submitted a new proof of loss to defendant that set out a claim for $822,519.14 resulting from the employee thefts.  Defendant rejected the proof of loss on October 18, 2005, telling plaintiff that the proof did not accurately reflect the amount of the covered loss.

Defendant retained forensic accountants Peters & Associates to review plaintiff's accounting files to assess the factual support for the claimed amount.  A December 14, 2005 report from the accountants calculated plaintiff's loss at $85,106.  In a February 6, 2006 letter, which plaintiff received on February 14, 2006, defendant offered $51,692 to settle the claim.  Ward considered the offer an insult and gave the matter to plaintiff's counsel. On May 17, 2006, after plaintiff rejected defendant's offer to settle, defendant asked Greg Martin, an insurance adjuster at Property General Adjusters, LLC, to review the claim file. Martin concluded in a May 30, 2006 report that "loss should be denied based on the very late report by the insured.  But if you believe that the policy requirement has been waived or you do not agree I recommend letter [sic] be sent to the insured . . . and enclose a check for $84,106 ($85,106 - $1,000 deductible)."

On February 25, 2008, plaintiff filed this action against defendant for breach of contract.  On June 2, 2008, plaintiff filed a first amended complaint asserting a claim for bad

5

faith and alleging that defendant "lacked a reasonable basis for refusing to fully indemnify Plaintiff's losses."

OPINION

A. Breach of Contract

The parties agree that the last known theft of plaintiff's Pizza Hut restaurant occurred in November 2003. They disagree about which statute sets the floor for the limitations period on employee dishonesty insurance coverage: the general six-year statute of limitations, under Wis. Stat. §§ 631.83(1)(d) and 893.43, or the one-year floor for "fire insurance" under Wis. Stat. § 631.83(1)(a) (which defendant's policy extends to two years).

Wisconsin courts have construed the term "fire insurance" broadly to include insurance policies covering losses other than losses from fire. E.g., Villa Clement v. National Union Fire Insurance Co., 120 Wis. 2d 140, 353 N.W.2d 369 (Ct. App. 1984) (flood damage); Arnold v. Cincinnati Insurance Co., 2004 WI App 195, 688 N.W.2d 708 (mold damage); Jones v. Secura Insurance Co., 2002 WI 11, 638 N.W.2d 575 (home leaning toward lake, chimney separating from house, deck slanting); Martin v. Liberty Mutual Fire Insurance Co., 97 Wis. 2d 127, 293 N.W.2d 168 (1980) (wind damage); Bronsteatter & Sons, Inc. v. American Growers Insurance Co., 2005 WI App 192, 703 N.W.2d 757 (property vandalism); Borgen v. Economy Preferred Insurance Co., 176 Wis. 2d 498, 500

N.W.2d 419 (Ct. App. 1993) (hailstorm damage).  In Villa Clement, 120 Wis. 2d at 148, 353 N.W. 2d at 373, the court held that the term "fire insurance" is a generic term that applies to all types of property indemnity insurance.  The agency now in charge of classifying insurance lines, the Commissioner of Insurance, defines "fire, inland marine and other property insurance" as insurance against "loss or damage to real and personal property . . . arising out of fire or *any other peril*." Wis. Admin. Code Ins. § 6.75 (emphasis added).  As defined in Villa Clement, "fire insurance" seems broad enough to include insurance policies covering theft, which is another type of damage to real or personal property.

However, no published case has specifically addressed the question whether theft falls under the general "fire insurance" policy in § 631.83(1)(a). (Defendant cites an unpublished Wisconsin Court of Appeals case, McAdams Inc. v. Transportation Insurance Co., 212 Wis. 2d 243, 568 N.W.2d 785 (Ct. App. 1997), holding that commercial crime coverage fell under the one-year statute of limitations imposed by § 631.83(1)(a); plaintiff strongly objects to defendant's use of the case.  Regardless, McAdams is of little persuasive value because it simply cites the court's holding in Villa Clement that "fire insurance" is a broad term.)  Plaintiff cites Gamma Tau Educational Foundation v. Ohio Casualty Insurance Co., 41 Wis. 2d 675, 165 N.W.2d 135 (1969), as an example of a case in which the Supreme Court of Wisconsin applied a six-year statute of limitations to a fraud case.  However, Gamma Tau was decided before the Wisconsin Legislature enacted § 631.83(1).  Moreover,

the court never discussed its reasons for applying the six-year statute of limitations, simply stating that the "applicable statute of limitations is sec. 893.19(3), Stats., which provides for a six-year period within which to bring an action upon a contract." Id. at 680, 165 N.W.2d at 138.

To support its argument that employee dishonesty insurance is not "fire insurance," plaintiff details the statutory history of § 631.83(1), pointing out that in the now-repealed Wis. Stat. § 201.04 (1973-74), insurance coverage was broken down into several categories, with "fire insurance" and "burglary insurance" as separate categories.  Plaintiff contends that because § 201.04 distinguished these categories of coverage, the legislature never intended to include burglary insurance in the "fire insurance" category.  However, as defendant explains, the legislature's intent to merge the separate classifications is shown by its replacement of § 201.04 with § 627.05, giving the Insurance Commissioner the power to classify insurance lines. 1975 Wis. Act 372.  The legislature explained the simplifications it made, noting that "'fire insurance' as defined in s. 201.04(1) is broad enough to include not only the extended coverage normally associated with fire insurance, but also marine insurance, burglary insurance, . . ." Id.

Plaintiff argues that as a policy matter, it would be inequitable to apply the one-year floor for a limitations period set out in § 631.83(1)(a) to employee dishonesty coverage because such coverage involves losses that will often not be discovered within one year.

Plaintiff argues that because the statute of limitations accrues at the "inception of the loss," the statute of limitations will often have run by the time the loss is discovered. Plaintiff is hardly in a position to appeal to equity; it knew about its injuries in 2003, well within the policy limitations period. At any rate, plaintiff's concern applies equally to other types of insurance coverage that nonetheless fall under the "fire insurance" umbrella. Wisconsin courts have enforced § 631.83(1)(a) strictly, even when a loss was not discovered until after the limitations period had ended. Borgen,176 Wis. 2d at 505, 500 N.W.2d at 422 (holding twelve-month statute of limitations begins to run at "inception" of damage, even when plaintiffs did not discover hail damage to home until fourteen months after hailstorm had caused damage), Bronsteatter, 2005 WI App. 192, ¶12 (holding statute of limitations began to run when corn planter was vandalized, not when plaintiff later realized planted seeds were not growing). Although this result may seem harsh, it protects the insurer from stale claims and creates a strong incentive for the party with the most control over its own losses to monitor them carefully. Borgen, 176 Wis. 2d at 509, 500 N.W.2d at 423.

Because "fire insurance" has been given such a broad meaning under Wisconsin law, I conclude that as the term is used in § 631.83(1)(a), it includes employee dishonesty coverage, which means that a one-year statute of limitations floor applies to such policies. Because plaintiff failed to bring its claim for employee dishonesty before defendant's more generous two-year limitations period had run, plaintiff's breach of contract claim is time-

barred. Defendant's motion for summary judgment will be granted as to this claim.

### B. Bad Faith

Next, defendant moves for summary judgment as to plaintiff's bad faith claim on the ground that it is time-barred because the alleged bad faith accrued more than two years before plaintiff filed its original complaint on February 25, 2008. Both parties agree that the applicable statute of limitations is two years, under Wis. Stat. § 893.57. Warmka v. Hartland Cicero Mutual Insurance Co., 136 Wis. 2d 31, 36, 400 N.W.2d 923, 925 (1987). However, the parties disagree on the accrual date of plaintiff's bad faith claim.

The statute of limitations on a bad faith claim begins to run "on the date the injury is discovered or with reasonable diligence should be discovered." Hansen v. A.H. Robins, Inc., 113 Wis. 2d 550, 560, 400 N.W.2d 923, 925 (1987). According to plaintiff, a bad faith injury may occur when an insurer ignores the recommendations of its own adjuster and offers to settle for a lower amount without any reasonable basis for doing so. Plaintiff's Opp. Br., dkt. #29, at 11. This means that defendant's alleged wrongdoing started at the latest on February 14, 2006 after defendant first allegedly rejected the recommendation of its hired forensic accountant and offered to settle for what plaintiff viewed as an insulting amount. Although plaintiff does not deny that it viewed this offer as evidence of bad faith, it nonetheless contends that its bad faith claim did not accrue until May 30, 2006, the date

it says that defendant last chose to ignore its insurance adjuster's opinion. Its argument is that "[d]efendant's bad faith actively *continued* up to at least the time it chose to ignore the opinion of its own adjuster [on May 30, 2006]. . ." and that there was "significant action" after February 14. Plt's Br., dkt. #29, at 10, 11-12. (Emphasis added). The problem with plaintiff's position is that claims such as bad faith brought under § 893.57 accrue with the first discovery, not when the injury ends or when the last known injury occurs. Hansen, 113 Wis. 2d at 560, 400 N.W.2d at 925 (discussing generally when tort claims accrue under § 893.57). Plaintiff cites no case law to support its theory that a bad faith claim does not accrue so long as it is "actively continu[ing]."

Plaintiff suggests that the question of accrual should go to a jury, citing Davis v. American Family Mutual Insurance Company, 212 Wis. 2d 382, 569 N.W.2d 64 (Ct. App. 1997) for the proposition that a jury must decide any factual disputes related to the accrual of a bad faith claim. In Davis, the parties disputed the date on which the plaintiff first knew or should have discovered the alleged bad faith; defendant said it was when it sent a letter denying plaintiffs' claim, and plaintiffs said it was when defendant sent plaintiffs a letter two years later stating that its approach to plaintiffs' underinsured motorist claims was "no pay and appeal." Id. at 392, 569 N.W.2d at 68. No such issue exists in the present case; there is no question that plaintiff first knew of defendant's alleged bad faith on February 14, 2006 when it received a letter from defendant offering to settle the claim for an "insulting"

$51,692.

Under § 893.57, defendant's alleged bad faith claim accrued no later than February 14, 2006. Because plaintiff did not file its original claim until February 25, 2008, more than two years after its claim accrued, plaintiff's bad faith is time-barred. Therefore, I will grant defendant's summary judgment motion as to that claim as well.

ORDER

IT IS ORDERED THAT

1. Defendant Westport Insurance Corp.'s motion for summary judgment, dkt. #24, is GRANTED.

2. The clerk is directed to enter judgment for defendant and close this case.

Entered this 17th day of February, 2009.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge